Mr. Rivera, may I proceed? Good morning. May I please report? My name is Hector Rivera. I'm with my partner, Caroline Chang. We represent Hewlett-Packard, the assignee of the Connery patent. Today we want to argue two main points. The first one has to do with the Board's denial of Connery Motion 1, of no interference in fact. And the second one has to do with the Board's denial in part of Connery Motion 2, of lack of written description. With respect to the first point, the Board determined that Connery did not meet its burden of proof with respect to showing non-obviousness of Connery's claims over Boucher's claims. And Boucher's claims were copied claims from the Connery patent. Claims 41 through 49 were copied from claims 1 through 9 of Connery. With the only difference being that Boucher used the term flow specification, sorry, Connery used the term flow specification, and Boucher changed that to transmit control block, or TCB. The Board construed both of those terms, and for flow specification the Board found that it required information sufficient to identify a block of data for transfer, while a TCB, or a transmit control block, is a well-known term of the art that's used with a TCP standard. And you're not challenging that construction, correct? We're not challenging that construction, Your Honor, we're not. It's quite broad, flow specification covering any information which identifies a block of data. I mean, that's a really broad construction, and your argument, as I understand it, is based largely on Dr. Johnson. That's correct, Your Honor. Well, the problem is, Dr. Johnson's affidavit, as I read it, was based on a very, very narrow construction. Dr. Johnson's affidavit was based on a, it was not that narrow of a construction. Certainly a lot narrower than the one the Board adopted. Sure, the Board partially adopted the construction that Dr. Johnson based his opinion on, and Dr. Johnson's opinions were primarily based on two components of a flow specification. One of them, critically, is that it requires this information to identify a block of data. The other one was that it also needed to identify the target cluster where the data is being stored. The other items that were listed in the construction he proposed, he later admitted during cross-examination that he saw those more as examples of the types of things that would meet those two components. The fact is that in most of his opinion, and I can walk you through some of the statements in his declaration, he raises this point of the PCB not having information about a block of data being critical. For example, if you look at A3578, Paragraph 88 of Dr. Johnson's declaration, A3578. Paragraph 88, okay. He said, based upon my analysis, the term flow specification is significantly different from the term transmit control block. A flow specification is specific to a given block of data and is sent to the network interface card before any data corresponding to that block of data is transmitted to the host. So again, he's highlighting the fact that the flow specification is specific to the block of data, while the PCB is not. On the next page, Paragraph 89, halfway down the paragraph, he says, nor can I find any suggestion, either in the Boucher claims themselves or from any other prior art that I'm aware of, to convert the use of a TCB Boucher Claim 41 into the flow specification residing in Connery Claim 1. Those, in my opinion, all Connery Claims 1 to 9 are unobvious, other than the Boucher Claims either taken along or in combination with any other prior art of which I am aware. Does he ever identify what that other prior art is? I mean, he makes reference to it, but... He talks about the RFC 793, which is the standard that describes the TCP protocol. And he also describes, in the appendix to his declaration, several pieces of prior art, like the Tannenbaum textbook, which was incorporated by reference by Boucher in their specification. And he also ties to the Comer and Stephens textbook, which describes the use of the TCP protocol. And in there, there's some information about what a TCB is and how it's used in their art. So if you also go to A3600 and paragraph 139 of Dr. Johnson's declaration, he states, based on the definitions of TCB and flow specification and in view of their significantly different operations in connection with data transfer, it would have been apparent to one of ordinary skilled in the art in the 1997 to 1998 timeframe the claimed Comery method using flow specification would be an obvious over the claimed Boucher method using a TCB. That is, the claims copied in the Boucher application using the TCP-based TCP data structure to determine if the packet belongs to an established TCP connection does not describe or make obvious comers use a flow specification to identify packets responsive to a given request for a block of data, such that their payloads may be copied to a pre-assigned memory location in the host system for that data block. So again, he's highlighting the fact that the flow specification is specific to a block of data and a TCB is specific to a connection. And through a connection, there can be many blocks of data or no blocks of data, and just because you're able to identify a connection doesn't mean you're able to identify a block of data. He also mentioned, and he doesn't specifically identify it, but he says, I have also reviewed a prior record, another pertinent prior art of which I am aware, and none of that prior art makes for the deficiencies of the TCB-based processing in the Boucher claims. In my opinion, the modifications that would be required to the method of Boucher claims 41 to 49 to allow it to use a flow specification specific to a block of data, as opposed to a TCB that is only specific to an entire TCP connection, would not have reflected the conventional or routine practices or other matters well known in the art as of 1997, 1998. So again, he's highlighting the point of being specific to a block of data, having that information that's required to identify a block of data. And Dr. Johnson is a professor of electrical engineering and computer science, and he himself has authored some of these internet protocols or has co-authored some of them, so he's aware of how they work and what the prior art that would be relevant here. You've been reading from the declaration. How does that reading overcome the board's finding that you failed to establish the scope of the prior art? So I believe that Dr. Johnson did discuss the prior art. So for example, his appendix, he goes through and discusses the prior art. And the board found that you failed to establish the scope of the prior art. And that's why we are appealing. We don't think that the board's opinion is supported by the evidence. The board, for example, in the Steeler case, said that a statement from an inventor saying that he's not aware of any prior art combined with the claims would make the opponent's claims obvious. Other than the TCP reference, was there any other reference to prior art? Is there any other prior art reference? Yes, there's some other articles, for example. Coming back to the presiding judge's initial question, Dr. Johnson was interpreting the claims differently than the board ended up interpreting the claims. And you don't appeal the board's broader determination. How do we know that Johnson was looking at the prior art through the correct understanding of the claims scope? Because the board did not adopt a completely different claim construction. The board adopted partially the construction that Dr. Johnson was advancing. And that construction had two elements. And Dr. Johnson, in all the references that I was just mentioning, he highlighted one of the elements, which is the one that the board adopted, the ability to identify a block of data. So that's the principal distinction, and most of the analysis he provides is based on that ability. Where would you say is Dr. Johnson's precise description of how he interprets flow specifications? Certainly, you all alleged a flow specification includes a sequence of number, range of the expected packets from the block data to be transferred. Well, that's rejected by the board. Specific memory and payload offset information, rejected by the board. I mean, I go through your definition. You have five parts of what constitutes a flow specification, and they've largely rejected. So where would you say is his precise – because, I mean, if he was looking at a flow specification as requiring all this, then the conclusory statement he makes when he says, you know, that he doesn't think it renders obvious counter-reduce of flow specifications by data packets responsive to a given request, well, that could be based on his belief that these are all necessary components of a flow specification, and that's why it isn't rendered obvious, or at least a part of why, in his view. And that's very difficult for us to parse out. So where do you – is his precise articulation of his understanding of what a flow specification is? If I can direct you to our reply brief. I want you to direct me to his declaration, or his – So he was deposed on that declaration. 3566, part of it. Where are you? So he was deposed on his declaration, and if you look at A4237, lines 2 through 9, he testified that, including by way of example, the four things that are listed after the first two elements of the point construction, number 1 through 4, he considered those to be examples of the kinds of things that could be used to identify the block of data and to identify the memory location for the target buffer. So he testified about the meaning of his declaration being primarily the two elements that I mentioned, which is the ability to identify the block of data and providing the information about the target buffer. Are you going to cover your second point? Yes, so on the second point, the board error in using the Boucher specification to construe the Boucher claims. This is an ESPINA issue? Exactly. The board basically ignored the in-res PINA doctrine. Your theory, in your reply brief at least, is that the claim should be bifurcated, that the limitation of the claim that was not exactly copied, which everybody agrees is substantially different, should not get the benefit or the burden of the ESPINA rule, but you argue that the exactly copied limitation should. At the very least, Your Honor. And we believe that the PCB, it doesn't matter which specification you construe it under because it's a term of art, but definitely the language that was exactly copied. I mean, as I read your reply brief, you were narrowing your opening brief's argument and you were going for a bifurcation of the claims. You say it's perfectly rational to take the TCP limitation out and not have ESPINA apply. Just to the TCB term that was not copied, Your Honor. So my question to you is if we agree that the board did the correct thing regarding ESPINA, then what's left of your appeal? With respect to the written description point? Yes. Well, I believe, Your Honor, that the fact that the board construed the copied terms, not under the ESPINA rule, but using the Boucher specification instead, that's still legal error. And that's in Claim 41? In Claim 41, correct. So what the board did is they applied, they said, well, because the entire reference or the entire limitation uses the word TCB, which was not copied, I'm going to construe the entire limitation based on the Boucher reference or the Boucher specification. But our point is that the not copied term is actually not relevant to our not written description argument because what we're saying is that determining whether the packet matches based on a TCB or a flow specification, that doesn't really matter. But that determination of whether the packet matches is the condition for transferring the data to the data buffer, the payload data to the data buffer. So whether you use TCB or flow specification is not really the point. It's whether the language, only if you determine that there is a match, then you transfer the data. So you're saying where they lack written description is in the language. If so, transferring the data payload in the packet directly to a target buffer. Correct, Your Honor. And that language is copied identically. Exactly, Your Honor. The FINA should have had to be applied. That's correct, Your Honor. Am I understanding it right? You're understanding that correctly. So the point is that the claim states determining whether the packet meets something, either a flow specification or a TCB, and that is the test used to determine whether to transfer the data or not. That is not described in the Bechet specification. So when you consider that properly under the Connery specification, like in the Harari case, this court did, then you would find that there's no written description and there's no evidence on the other side to show otherwise. So you end up having a situation under your rule where you interpret the claim partially looking to Bechet and partially looking to Connery. Well, that's not what we're advocating for, Your Honor. Well, that's what your reply brief says. We're acknowledging that even if you do that, you still end up with our result because the term that was not copied is not official. Well, you just said an odd situation. I mean, I'm trying to understand what all of Claim 41 means, but I look to one specification to decide what the TCP means, and I look to the other specifications to decide what, and if so, transferring means. We ordinarily don't bifurcate a claim for interpretation purposes. I see that amount of time, so I can answer your question. Yes. I think you should just interpret the entire claim based on Connery, based on the in-risk penal lineup cases. But even in the worst-case scenario against that, we're saying that even if you look at the non-copied term under the other specifications, you still reach the same result because that's not the limitation that we say there's no written description for. We'll give you back two minutes of rebuttal time. Thank you, Your Honor. We'll hear from Mr. Latham. May it please the Court. Tom Latham, Silicon Edge Law Group, on behalf of Boucher. With me is Mark Lauer, my partner from Silicon Edge, and Mr. Charles L. Goltz from Spivon, Oblac, Spivon. I might comment on some of the points that Mr. Rivera mentioned. I believe the questions by the Court have hit many of the issues we raised in our brief. In denying a no-interference-in-fact motion that the Board held, Connery had failed to carry its burden of proof. The Board got it absolutely right. The Board found that TCB was a data structure containing connection information. Flow specification was a data structure containing block of data information. They're different. As Judge Morris noted, they're very broad. There's a potential overlap. Whether there's a block of data in a TCB would constitute an overlap and render Connery's claims obvious over Boucher's claims. Connery had the burden of proof to show non-obviousness. Connery relies on the testimony of Dr. Johnson. Again, Judge Moore, Judge Clevenger, Bolton, you're absolutely correct that Dr. Johnson's testimony is based on a very narrow definition of both TCB and flow specification. Connery now agrees with the Board's broad constructions but relies on evidence that depends on very narrow constructions. So, with respect to the Graham v. Deere test, in identifying scope and content of the prior art, Dr. Johnson and Connery got it wrong on the scope of Boucher's claims as prior art because they never analyze Boucher's claims with a TCB as the Board construed it. They point to all kinds of details that are contained in the description of Boucher's preferred embodiment but never say what the scope of Boucher's claim is with the Board's construction. A data structure with connection information that could have block of data information. With respect to the scope and content of the prior art, they also were supposed to identify other prior art and Judge Rayna got it exactly right. We have a statement by Dr. Johnson that he's reviewed other prior art but he doesn't identify any of it. Now the key issue here is would it be apparent through one of ordinary skill in the art to include block of data information in the TCB for that claim 41 properly construed? Connery says the thing that's requested over a network, over a computer system network, is a block of data. Typically it's a block of data. I don't know if that's right or not. I don't know that term. I do know every minute, every hour, every day, every month, every year, there are hundreds of millions of requests for data that go out over the Internet and other networks that are responded to. Data comes back in. Somehow that thing requested is identified in every transaction. The application that's requesting it knows what it's requesting. It knows when it's receiving that thing. Is it called a block of data? Maybe. There's no prior art on block of data at all. Maybe it's called a file. Maybe it's just data. Maybe it's a message. Maybe it's a record. There are all kinds. Maybe it's an HTTP page. But the application knows what it is and knows when it's getting it. There's no prior art at all identified that discusses what that thing is that's being requested, how it's identified, where that information is maintained and stored, whether it's ever maintained and stored. What's your response to your client's argument that reference to the TCP mode is sufficient because it's a term of art? It's prior art. He's correct that it's prior art. What we argued, Your Honor, is there should be prior art on what block of data it is, how it's identified, how it's used, where it's maintained and stored, or some other thing like a file if it's not block of data or just data. The TCP protocol is the protocol for TCP. TCP is a lower level protocol than the application protocol. So it doesn't talk about block of data, not specifically. Some of the tools in TCP can be used to identify a block of data as described in the Connery specification. That's also what Boucher does. It uses those same tools. But that is not prior art on block of data. It's not prior art on the thing requested. What does Boucher's application tell us about what a block of data is? What does Boucher's application tell us about what a block of data is? Boucher's application doesn't use that term. We made the argument, however, that what Connery says is the mechanism for identifying a block of data in, for example, its preferred environment. But it's in your claim, right? It's in Boucher's claim, block of data. Yes. But it isn't described anywhere in its application? If I said that, I misspoke. We don't use the term block of data, but what I would say is… Well, isn't there some learning in the Boucher patent about what a block of data is? Yes. There would have to be, wouldn't there? Yes. And why can't Connery take advantage of that? There is identification of a block of data in Boucher, but not in those terms. It's in the terms, in effect, it's in the terms used in Connery in describing one of its embodiments, its preferred embodiment. We made the argument that Boucher… There's no information out there anywhere about what a block of data is, and I see the term is in Boucher's own patent, so it has to be described in his patent. Yes, sir. Somewhere. Yes, sir. Yes, sir. You're absolutely right. We argued that Boucher's application anticipated. We lost that argument, and we did not appeal it, but we lost that argument, we believe, for non-subjective reasons. That's neither here nor there. The argument that we lost is whether a block of data is in a TCB. We lost that argument. But we didn't lose, it wasn't addressed, the argument as to whether there's information about a block of data on the card. You look through all of Connery's papers. There's no reference in Connery's papers to the Boucher invention not working. They acknowledge that it works. Both inventions do the same thing. There's a smart card that receives a packet, matches the packet to a data structure. If there's matching, it sends the data directly to a high-level buffer. They both do exactly that same thing. You can't do that unless you know what that thing is. So Boucher knows what that thing is. Can you address a little bit the Wren description argument? Your opponent is arguing to us that we should treat verbatim copied and substantially copied claims as the same. What's your response? Well, first, their position has shifted a bit. Below, they said Boucher's TCB is governed by Boucher's disclosure. So they argued it should be construed in accordance with Boucher's disclosure. In their opening brief, they argued the entire claim should be construed in accordance with Connery's disclosure. In their reply, they went back and said,  Judge Moore got it right when she asked. But what they're arguing is, if so, is non-copied language, and that should be construed in accordance with Connery's specification. My reaction to that is twofold. First, if you construe TCB in accordance with Boucher's application, the if-so, the so is the matching to the TCB. You have a TCB, you're matching to a TCB, if so, transferring. How can the if-so not be influenced, the meaning of that, not be influenced by the TCB that it's referring to? Well, how is it? That question certainly puzzled me, but I couldn't figure out why. It made any difference whether you were using the flow specification or the TCB. We don't. So why? I mean, you're trying to tell me now that it makes a world of difference. Why? I'm suggesting— I start from the premise that our law is very clear that if you exactly copy, right, then the SPINA rule applies, right? Yes, sir. There's no question about that. Yes, sir. And so a big piece of this claim has been exactly copied. Yes. One limitation has not. Correct. So why shouldn't we apply the SPINA rule to the exactly copied portion, which gets to the if-so? I believe the board drew a rational line. Once you get to the— The board has been having trouble digesting SPINA from the get-go, right? It's sort of stuck in their craw. And they spit it out a couple of times, and we whacked them down for doing that. In Hilary. In Hilary, correct? Yes. So we've got the question in front of us is bifurcate or not. And my question to you is, you know, why shouldn't you take the exactly copied portion of the claim, which is driving, as I understood from your adversary, that's what's driving the WD argument. The written description argument isn't over whether or not there's a written description for TCP or closed specification. The written description argument is whether or not the if-so effect is adequately described in your client specification. Now, so tell me why, given the rigidity of our we love SPINA around here, why we shouldn't love SPINA and apply it to the verbatim copied portions of the claim. First, Your Honor, as to why you shouldn't love SPINA, I'm going to defer to A.P.J. Torkson. He wrote on that issue in his concurrent opinion. I may well, if I had a case of first impression, I might have not done what Judge Newman did way back when. But that's not that, you know, ship left the harbor. So my question to you is why shouldn't we faithfully apply SPINA to the literally copied portions of the claim where the WD description turns on the literally copied portions of the claim. In certain circumstances, identified by the board in this case, the literally copied portion can be interpreted differently and should be interpreted differently when it is based on the non-copied term. For example, in a method claim where a step of the method... Let's talk about this case. Let's not talk about some other hypothetical that might justify what... This is a method claim. It has steps, receiving, matching, transferring. The matching is to a TCB or a flow specification, and if so, transferring. The argument we would make is the board's argument, not just TCB itself, but in a method claim where you're talking about steps that involve that non-copied item, you have to interpret the steps that involve that non-copied item in light of the disclosure, you know, the host disclosure for that non-copied term. Otherwise, it doesn't make sense. If you're going to concede that you interpret TCB in accordance with Boucher's application... It doesn't make sense. Why? Because we ordinarily don't use two different tests to interpret a single claim? Because, and if so, although it's copied language, those are not terms of art. They're just commonly understood terms. They are a part of the... I think Judge Clevenger's asking a more global question, which is, does the claim have to be all SPINA or no SPINA? And if it's not copied directly, if there's any portion of the claim that's not copied directly, does that get the whole claim out of SPINA? Like, for example, I'm wondering, would you argue that a totally separate aspect of the claim that does not depend upon, mention, or otherwise relate at all to TCB or flow specification language, you know, some subsequent portion of the claim at a later method stage, would also not... we would also not use SPINA, even though every part of that element, broadly defined element of the claim, is directly copied? I mean, what would you say about that? I'm not sure what I would say in a different case, Your Honour. I think in this case... No, I want to know what you would say. Are you limiting yourself? Are you saying when there's an element, a portion of which is not copied, that that whole element then has to be out from under SPINA? Because if that's so, then you're of course admitting the inverse, which is the rest of the elements are in SPINA, because there'd be no reason for them not to be, because they don't depend, hinge, or relate at all to the non-copied term. And so I'm trying to understand, because I think Judge Clevenger was starting from the premise of all or nothing with claims, and I thought you were fudging around on your answer, and I want to know, are you saying it's an all or nothing rule, you change one word, but SPINA's out, or is it only SPINA's out with regard to the things affected by that one word in the claim? I apologize if I seem to be fudging. I agree with the Board. I believe you should interpret non-copied terms according to their host disclosure, and in a method claim you should interpret limitations that impact, that affect, that act on the non-copied term, you should interpret those also in accordance with the host disclosure. I think Claim 44 is an example of that. We should talk briefly about Claim 44. Claim 44 is a limited, it's a dependent claim, doesn't mention TCB, but it refers to the operations that involve TCB. I think the line the Board's trying to follow, this Court's guidance, and I believe the line they drew makes sense. If you're going to interpret a non-copied term in accordance with its host disclosure, and that term is in the middle of a step, you need to interpret that step in accordance with the host disclosure. What happens if a non-copied term is irrelevant to the written description argument? Your adversary's made that argument here, and I haven't understood you to disagree with that. I do disagree with that. I do disagree with that. I'm sure you would, but I didn't see you briefly. I'm out of time. May I respond to the question? Frankly, the Spina question is an alternative. The real ruling the Court made is whether you look at Connery's patent or you look at Boucher's disclosure, Connery's interpretation of and-if-so incorporates detailed features of Connery's preferred embodiment into a broader claim, and the Court rejected that interpretation. If you look at just the language of the element, the limitation, they admit Boucher receives matches, transfers. They say you've got to add some additional stuff from Connery's specification. The Board rejected that argument. Looking at Connery's specification, the Board rejected that argument. Let me see if I understand your argument. Is your argument that even if the Board rejected the Spina concept and we disagree, even if that's the case, that it's harmless error because Boucher and Connery both proffer and you come to the same end point regardless of which one you use with regard to the directly transferred? Absolutely, Your Honor. The Board said that. The Board entered an alternate basis for the ruling. Okay, thank you very much. Mr. Rivera, will you answer rebuttal? Let me start with that last point, Your Honor. I think the Spina rule applies. Harari definitely says... Yeah, but I think his point is that even if I understand it, the last point, even if Spina applies, it's irrelevant because both of the specifications in this case put forth an identical construction and the Board made that alternative holding. That's not correct, Your Honor. The Board mentioned that even if they were to come through based on... Even if we were to interpret... But they didn't do it. They didn't provide any interpretation. They just said, even if we were to do it, there's additional limitations here. Well, sure they did. Even if we were to interpret the contested limitation in light of the Connery patent, Boucher's claim would not require the additional items. That's saying, looking at Connery, it doesn't add in intermediate steps as far as I understand. But they don't say what the additional items are, and the language itself is clear. You determine whether there's a match, and if so, you transfer. There's no room for additional items. They have this comprising argument that you could have other things, but comprising doesn't apply to that language. The test for transferring is determining there is a match, not other things that you can do afterward. So we think that the language of the claim is clear, and when you look at Connery, all the embodiments in Connery, when there's a transferring, the only test to determine whether it's a transfer is that matching, and that is not described in Boucher. On the other point of no interference in fact, they're trying to get our claims and telling you that the elements that have the CCB are so different with respect to the written description that you should look at their specification, but that cuts against saying that there is an interference in fact here. If you look at what they were telling you about identification of a block of data, an application can tell that there's a block of data, but we're not talking about the application at a higher level. We're looking at the card. Is the card able to identify the block of data? And if they admit it at the TCB level, which is where the card is operating, there's no notion of block of data. You can have 100 blocks of data in one connection. The TCB will tell you, yes, that's the connection, but it wouldn't tell you that there's a block of data. And if I may quickly refer the court to A3584, paragraph 107 of Dr. Johnson's declaration, I think he makes clear there that the key difference in the construction is the ability to identify a block of data, not the other limitations that the board rejected. Thank you, Your Honor. Thank you, Mr. Rivera. We thank both counsel for their arguments. The case is submitted.